Staples, J.,
delivered the opinion of the court.
This is an appeal from a decree of the circuit court of Goochland county. There is but a single point in the case, and that will be better understood by a brief statement of the facts. "William Holland recovered judgment for money against John M. Trevillian in the county court of Goochland; an execution on this judgment was sued out on the 22d of June, 1871, and made returnable to the following September rules. The execution was returned by the sheriff unsatisfied. At the time of its delivery to the sheriff', Trevillian, the debtor, had funds to his credit in the Hnion Bank of Richmond, and he vras also the owner of a Richmond city bond, amounting to about $1,000. Holland, the judgment creditor, died in September or October, 1871, and Trevillian died about the 1st of May, 1872, no effort having been made in the lifetime of either to enforce the lien of the execution against these choses in action. The controversy here is between the representatives of Holland on the one hand, maintaining the execution lien upon the funds in bank and the proceeds of the Richmond city bond, and the other creditors of Trevillian controverting the lien and claiming the funds as assets in the hands of the personal representatives, to be applied ratably to all the debts of Trevillian.
*527 The sole question, therefore, to be decided, and the only one intended to be, is, whether the lien of an execution upon the- debtor’s choses in action, not enforced in his lifetime, continues after his death as against the other creditors of the debtor.
This question must be solved by the provisions of sections 3 and 4, chapter 188, Code of 1849; Code of 1873, ch. 184, p. 1179.
The first of these sections declares that a writ of fieri facias, in addition to the effect it has under chapter 187, shall be a lien from the time it is delivered to the sheriff to be executed upon all the personal estate of the debtor, although not levied on, nor capable of being levied on under that chapter, except that as against an assignee of any such estate for valuable consideration, or a person making payment to the judgment debtor, the lien, by virtue of this section, shall be valid only from the time he has notice thereof.
The fourth section provides that the lien acquired under the preceding section shall cease whenever the right of the judgment creditor to levy the fieri facias under which the lien arises, or to levy a new execution on his judgment, ceases or is suspended by a forthcoming bond given and forfeited, or by a supersedeas or other legal process. It is conceded that under the third section the lien of an execution upon the debtor’s choses in action is a legal lien, and continuing in its nature; that it does not cease with the return day, and that- it is good against all persons except an assignee for valuable consideration without notice. This is settled by the decisions of this court in Puryear v. Taylor, 12 Gratt. 401; Evans’ trustee v. Greenhow et als., 15 Gratt. 153; Charron & Co. v. Boswell, 18 Gratt. 216.
It is insisted, however, that under the fourth section, whenever the right to levy an execution, under which the lien arises, or the right to levy a new execution upon *528 the judgment ceases from any cause, whether in payment of the debt, the statutes of limitation, or otherwise, the lien given by the third section also ceases; and inasmuch as the right to levy a new7 execution terminates with the death of the debtor, the lien acquired under the original execution necessarily terminates with it, if not enforced in the lifetime of the debtor.
The argument of the learned counsel proves too much; for if the lien acquired under the third section ceases whenever the right to levy ceases from any cause, then the lien is lost whenever the return day of the execution passes without a levy; for there can be no levy after the return da}7. It is manifest it was not the design of the fourth section to provide for every case in which the lien of an execution might be at an end. It was unnecessary to do so. It was unnecessary to declare that the lien should cease upon the payment of the debt, or upon its discharge or extinguishment by any of the causes which under the general law would have that effect. In such cases the lien would, of course, cease without any special enactment so declaring. The real purpose of the section was to provide that certain causes should have the effect of putting an end to the lien, which perhaps of themselves, without some such provision, would not have accomplished that object. In other words, whenever the right to levy ceased or was even suspended by the forthcoming bond, given and forfeited, a supersedeas, or other legal process, the lien acquired by suing out the execution also ceased. A forthcoming bond sometimes operates as a satisfaction of the debt and judgment thereon, and sometimes a mere suspension of the right to sue out other executions. When forfeited it is a bar to any other proceedings on the original judgment until quashed, even though defective; so that if it is never quashed, the right to levy a new execution upon the original judgment ceases—is gone forever. The cred *529 itor must rely upon the security afforded hy the bond and the judgment thereon. On the other hand, if the forthcoming bond be quashed as faulty, the creditor has his remedy against the officer if he is in default, or he may resort to his original judgment and sue out executions thereon, precisely as if no bond had been taken. But in either event, b}7 the express terms of the fourth section, the lien of the original execution upon the eboses in action is gone; so that the word “ceases,” upon which .counsel lays so much stress, has its appropriate place and signification in connection with the operation of the forthcoming bond; and the same thing is true with respect to the supersedeas and other legal process.
The legislature, in taking away the creditor’s lien in this class of cases, must have supposed it was giving him a security equally, if not more, efficient in many respects. It is easy to understand, therefore, why provision was made for the termination of the lien after a forthcoming bond taken and forfeited, supersedeas bond and process of a like character. But it is difficult to understand upon what principle the creditor is allowed to acquire a lien only to be defeated without affording him any other security. It can scarcely be supposed it was the purpose of the legislature that the death of the debtor should deprive one creditor of the results of his superior diligence for the benefit of other creditors who have been less diligent. At common law, when an execution is delivered to the sheriff, he may proceed to levy and sell, notwithstanding the death of the debtor, and it may fairly be presumed it was intended to make the lien of the execution equally effective with respect to the choses in action.
It is true that the statutes relating to the administration of estates prescribe that the assets shall be applied to the payment of certain debts in the order of priority, and after that ratably to all other debts. But it has never *530 been supposed that these statutes were designed to interfere with bona fide liens obtained in the lifetime of the debtor. The personal representative holding the assets for the benefit of the creditors or legatees, does so in subordination to all valid incumbrances thereon, whether voluntarily given by the debtor or obtained against him by process of law.
It has been argued that while the provisions of chapters 187 and 188 (Code 1849) were doubtless designed as a substitute for the old ea. sa., the lien of an execution under the section already cited is not in its effects coextensive with the remedy by ea. sa. unless and until the creditor has proceeded to enforce the lien in the lifetime of the debtor by process of garnishment or interrogatories to the debtor. Now, it may be conceded that the lien of the ea. sa. was merely inchoate, and could not be enforced so long as tire debtor chose to remain in prison. J3ut when he was once discharged by taking the oath of insolvency, the lien became perfect and complete, and all his goods and chattels, rights and credits, became vested in the sheriff for the benefit of the creditor, and neither the death of the debtor nor any other event could defeat this lien without the consent of the creditor. The revisors, in their report, say that chapter 188 was intended to provide for the creditor as efficient remedies as he had when the debtor was discharged by taking the oath of insolvency. 2 Rev. R. 926.
In Puryear v. Taylor, 12 Gratt. 401, 408, Judge Samuels, after quoting the language thus given, says: “The revisors accordingly reported a section of the statute giving the creditor the remedy indicated by them, and the general assembly, in substance, adopted the suggestion which is found embodied in section 3d, chapter 188.” And in Charron & Co. v. Boswell, 18 Gratt. 216, 225, the president, speaking for the whole court, said of the lien acquired under this third section: “In its nature, it is *531 more like the lien for ivhieh, in part, it was intended as-a substitute, and which a creditor formerly acquired when; his debtor took the oath of insolvency.”
These authorities settle it, beyond question, that the lien acquired under sections 3d and 4th of chapter 188 {Code 1849), upon the debtor’s choses in action, is, in its nature, substantially the same as the lien of the ca. sa. after the debtor had taken' the oath of insolvency—a lien complete and unconditional, and in no manner impaired by the death of the debtor. The remedies afforded by the other sections of the same chapter (188) were designed simply to enforce this lien of the execution. The lien itself is as complete and perfect without them as with them. It continues in full force, although the creditor should never resort to those remedies. This is fully settled by the case of Charron & Co. v. Boswell, already cited. Speaking of the interrogatories to the debtor and the process of garnishment, the court says: “ These proceedings do not give a lien, general or'specific. They are merely a means provided by law for the enforcement of a legal lien which already exists.” It may, therefore, be safely assumed that the lien of a writ of fieri facias upon the debtor’s choses in action, although not asserted in the lifetime of the debtor or creditor, -is not defeated or impaired by the death of either or both, and this lien may be enforced in a suit for the administration of the assets, or by the remedies provided in the same chapter, asserted in the proper court. The inconveniences which the learned counsel suppose will result to the personal representative from the existence of this lien are, in a great degree, imaginary. An examination of the records will generally show the executions in force against the decedent estate. Besides, the personal representative is not compellable to pay any debt in the absence of a specific lien until after the lapse of twelve months from the date of his qualification; and if after that period he makes *532 such payment, he cannot thereby be held personally responsible for any debt or demand against the decedent of equal or superior dignity, -whether. it he of record or not, unless before such payment he shall have notice of such debt or demand. Code of 1873, ch. 126, § 26. The various provisions authorizing the accounts to be laid before a commissioner for settlement', and creditors and others interested to he summoned to prove their claims, will generally secure the presentation of all demands against the estate. However this may be, the argument, ab inconvenienti, is one properly addressed to the legislature, and not to the courts. ITor these reasons, we are of opinion there is no error in the decree of the circuit court, and the same must he affirmed.
Dec use aeeirmed.